**SHENANDOAH EDUCATION ASSOCIATION and Janice Gardner, Appellants,**

v.

**SHENANDOAH COMMUNITY SCHOOL DISTRICT, Appellee.**

**Janice GARDNER, Appellant,**

v.

**BOARD OF EDUCATION OF the SHENANDOAH COMMUNITY SCHOOL DISTRICT and the Shenandoah Community School District, Appellees.**

No. 68634.

Supreme Court of Iowa.

Aug. 17, 1983.

Rehearing Denied Sept. 16, 1983.

James L. Sayre and Charles Gribble of Sayre & Gribble, for appellants.

John R. Phillips, of Rogers, Phillips & Swanger, for appellee.

WOLLE, Justice.

The issue in this case is whether we should enforce the decision of an arbitrator reinstating appellant Janice Garnder to her former teaching position in the Shenandoah Community School District, or instead enforce a contrary subsequent decision of an adjudicator upholding the board's decision terminating her contract. The trial court vacated the arbitrator's decision and enforced the decision of the adjudicator. We reverse because the arbitrator's decision concerned an arbitrable subject, drew its essence from the parties' collective bargaining agreement, and should have been enforced, ending the termination proceedings.

On March 2, 1981 the school district's superintendent caused to be served upon Gardner a written notice of recommendation of termination, pursuant to Iowa Code section 279.15 (1981), citing as specified reasons fiscal problems ("budgetary constraints and economic necessity") and program realignment. On March 3, 1981, Gardner requested a statutory private hearing, and on March 6, 1981 Gardner and the Shenandoah Education Association (association) as her collective bargaining representative filed a grievance under the negotiated collective bargaining agreement (negotiated agreement) between the district and the association. Thus two concurrent dispute-resolution procedures were initiated, the request for hearing triggering statutory appeal procedures provided by Iowa Code sections 279.15–.18 (1981), and the grievance leading toward arbitration under the negotiated agreement.

Pursuant to the statutory appeal procedures, an evidentiary hearing was first held before the district's board of directors on March 19, 1981. The board overruled Gardner's request that the private hearing be continued until her grievance was resolved or decided by an arbitrator. The board then received evidence and by written decision dated March 23, 1981 upheld the super-intendent's recommendation that she be terminated. Gardner filed a statutory appeal from that decision and an adjudicator, Richard F. Dole, was selected by the parties.

The grievance filed by Gardner and the association was not resolved in the steps provided by the negotiated agreement, and the parties selected an arbitrator, Edward T. Maslanka, to render an arbitration decision. Maslanka held an evidentiary hearing on May 1, 1981, and on May 15, 1981 he issued his decision finding that the district had violated the negotiated agreement in terminating Gardner. Maslanka ordered the board to rescind the termination notice and void its consequences, thereby directing that Gardner be reinstated. In arriving at his decision, the arbitrator found that the district had the authority to eliminate a position and to decide which programs it would retain; but he concluded that the district violated the negotiated agreement's reduction-in-staff provisions by laying off Gardner and retaining another teacher, identified only as "teacher D."

When the date arrived for a hearing before the adjudicator selected by the parties, Gardner moved to stay further proceedings on the ground that the arbitrator's decision, if honored or enforced, would bind the district and bar termination of her contract. The district resisted the motion, and the adjudicator denied that request for a stay, held an evidentiary hearing on August 6, 1981, and by decision dated September 14, 1981 affirmed the decision of the board.

Gardner sought relief by initiating three separate actions in the trial court. First, on July 23, 1981, she joined with the association in filing a petition in equity seeking enforcement of the arbitrator's decision. Shortly thereafter, on July 30, 1981, she filed a petition for judicial review of the adjudicator's denial of her motion to stay the statutory proceedings before him. Before either of those matters was heard in the trial court, Gardner on October 8, 1981, filed a statutory notice of appeal seeking judicial review of the adjudicator's decision

which upheld the board's termination of her contract. The actions to enforce the arbitration decision and to review the adjudicator's decision were consolidated on motion of the district, and they were heard by the trial court on March 15, 1982. The court vacated the arbitrator's decision and affirmed the decision of the adjudicator, thereby upholding the district's action in terminating Gardner.

The trial court rejected the arbitration decision on three alternate grounds: (1) that the arbitration decision was without effect because the decision to employ or terminate a teacher rests exclusively in the school board; (2) that the arbitrator exceeded his authority by basing his decision on matters not submitted to arbitration; and (3) that the record viewed as a whole established that there was just cause for terminating Gardner and no violations of the negotiated agreement by the district. The trial court upheld the adjudicator's decision by finding it was supported by a preponderance of the competent evidence in the record.

In this appeal Gardner and the association contend that the arbitrator's decision should have been honored and enforced, thereby making unnecessary the subsequent statutory appeal procedures which resulted in the adjudicator's decision.

I. *The Arbitration Decision.* Each of the trial court's reasons for rejecting the decision of the arbitrator should be considered separately.

■ A. *Exclusivity of the Statutory Remedy.* The trial court found that the decision whether to employ or terminate a teacher is not arbitrable but rather is exclusively the subject of action of the school board subject to statutory appeal procedures. The court based that conclusion primarily upon this court's decision in *Moravek v. Davenport Community School District,* 262 N.W.2d 797 (Iowa 1978), which held that a master contract purporting to govern teacher contract terminations violated Iowa Code section 279.13 (1975) as then in force and was against public policy. 262 N.W.2d at 805. *Moravek,* however, is distinguisha-

ble because the controlling provisions of Iowa Code chapter 279 (1975) have since undergone substantial revision. The provision then in Iowa Code section 279.13 (1975) stating that "the action of the board shall be final" has been removed; non-probationary teachers are now allowed to appeal to an adjudicator whose decision can supersede the Board's decision. Iowa Code §§ 279.- 17–.18 (1981). No longer is it against the public policy reflected in Iowa statutes for a school board's termination decision to be overturned by an outside decision maker. Thus, *Moravek* did not reach the question here as to whether that outside decision maker could be an arbitrator pursuant to Iowa Code chapter 20 and the parties' collective bargaining agreement rather than an adjudicator; chapter 20 was not mentioned in *Moravek* even though it had been enacted in 1975, taking effect in part on July 1, 1974.

In *Bruton v. Ames Community School Dist.,* 291 N.W.2d 351, 354–55 (Iowa 1980), this court carefully traced the recent history of Iowa Code chapter 279, outlined the changes occurring after *Moravek,* and held "that the law now writes sections 279.13 to 279.19 of the Code into teachers' contracts in Iowa." 291 N.W.2d at 356. The school district in *Bruton* had attempted to enforce a contract provision under which the teacher was hired only for one year; the provision was treated as an attempt to evade statutory termination procedures and was given no effect. *Bruton,* like *Moravek,* did not reach the question here as to the effect on termination of an arbitration decision finding that the school district has violated contract provisions governing the selection of persons to be laid off.

■ We hold that the determination of which teacher should be selected for layoff, when layoff is necessary, may properly be the subject of a negotiated agreement authorized by Iowa Code section 20.9 and may be decided by an arbitrator pursuant to contract grievance procedures authorized by section 20.18, even though the provisions of Iowa Code sections 279.13 to 279.19 are written into such contracts and ordinarily

would be followed when the school district decides to reduce its staff by terminating one or more teachers.

It is important to distinguish this case from cases involving discharge for just cause which is personal to the teacher and provided for in Iowa Code section 279.27. The latter subject is not a mandatory subject of bargaining under Iowa Code section 20.9 (1981). Statutory appeal procedures provided by Iowa Code chapter 279 would take precedence when the issue is discharge of a teacher for just cause under section 279.27.

■ B. *Matters Considered by the Arbitrator.* The trial court also decided that the arbitration decision is not enforceable because the arbitrator exceeded his authority in considering the academic needs of the school district. The arbitrator did consider the needs of the district but was well within his authority and the scope of the arbitrable issues in doing so. The wording of the grievance and the district's response clearly identified Article 9, sections B and C, of the negotiated agreement as the pertinent contract provisions to be construed and applied. Section C provided that the Board "shall determine which employee is to be terminated according to the needs of the school district," with five such needs listed. Under the circumstances the arbitrator was necessarily required to evaluate the district's determination of its needs within the context of the agreement's express staff-reduction procedure. That issue was framed both by the language of the negotiated agreement itself and by the parties' prehearing description of the issue to be decided. The arbitrator simply could not decide whether the district had violated the staff reduction procedures in selecting Gardner for lay off, without applying the contract language to the evidence presented. We note that the arbitrator did not decide that the district could not eliminate a position, only that it violated the contract in selecting Gardner for lay off rather than another teacher.

■ C. *Review of Arbitrator's Decision.* The trial court correctly defined the scope of review of arbitration awards in Iowa by quoting the following language from *Sergeant Bluff-Luton Education Ass'n v. Sergeant Bluff-Luton Community School District,* 282 N.W.2d 144, 148 (Iowa 1979):

> Once arbitrability of the issue is established, the sole question to be determined by the court on review is whether the arbitrator's award 'drew its essence' from the collective bargaining agreement. It is not the function of the Court to determine whether the arbitrator has resolved the grievance correctly.

282 N.W.2d at 148. The court then decided, however, that arbitrability had not been established and that the arbitrator had improperly considered academic needs of the school district in finding a contract violation. Considering all other matters in the record, the court concluded that the district had not violated the negotiated agreement.

■ We have here decided that the issue presented by the parties was arbitrable and that the arbitrator did not consider matters outside the contract language and issue submitted. We must determine whether the award "drew its essence" from the collective bargaining agreement. As we said in *Sergeant Bluff-Luton Education Ass'n v. Sergeant Bluff-Luton Community School District:*

> The "essence" of a collective bargaining agreement is an extremely broad concept. It requires a casting aside of traditional views of contract law in favor of a multitude of other considerations, including not only the written and unwritten agreements, themselves, but also the practices of the parties or the industry in general.
>
> . . . .
>
> Once it is determined the arbitrator's award is drawn from the essence of the agreement, our consideration of the relative merits of the controversy must terminate.

282 N.W.2d at 150.

■ We find the arbitration award meets that test. The arbitrator's decision is clearly based on the express contract language

governing procedures for staff reductions, the evaluation by the arbitrator of five specified needs of the school district. The arbitrator found insufficient justification for the District to depart from those five criteria. The trial court erred in vacating the arbitration decision; the petition of Gardner and the Association to enforce the arbitrator's decision should have been granted.

II. *Effect of Arbitration Decision on Statutory Adjudication.* Having determined that the arbitration decision should have been honored by the district or enforced by the trial court, we must decide what is the final substantive effect of that decision directing Gardner's reinstatement, as well as its effect on the statutory appeal proceedings which occurred while the grievance was being processed. The trial court did not address these issues because it vacated the arbitrator's award.

■ A. *Substantive Effect.* The arbitration decision, when rendered, was final and binding on the district, Gardner, and the association, all of whom were parties to the negotiated agreement. The negotiated agreement provided for binding arbitration, within the authority provided by Iowa Code section 20.18 (1981). Under the facts in this case, Gardner could not lawfully be terminated through chapter 279 proceedings. The district and its board chose to reduce its staff by only one person, but it improperly selected Gardner to be that person rather than "teacher D". Once it was finally decided by arbitration decision that Gardner was improperly selected for lay off, the entire basis for terminating her failed.

In *Board of Education of Fort Madison Community School Dist. v. Youel*, 282 N.W.2d 677 (Iowa 1979), this court announced the rule that on appeals from action of the adjudicator and the trial court in teachers' termination cases, we review the record in the manner specified in Iowa Code section 279.18 and make anew the judicial determinations specified in that section. 282 N.W.2d at 679–80. The third of seven specified grounds upon which the trial court and this court may grant relief is that the

"substantial rights of the petitioner have been prejudiced because the action is . . . [i]n violation of a board rule or policy or contract . . ." Iowa Code § 279.18(3) (1981).

In this case the decisions of the adjudicator and the trial court must be reversed because the board's action to terminate Gardner violated the negotiated agreement. The arbitrator decided that the district had violated its contract and that Gardner should be reinstated because her substantial rights had been prejudiced. That decision is binding on the district.

■ B. *Procedural Effect.* It is extremely unfortunate that the parties here struggled through so many hearings and procedural difficulties leading up to this decision on the merits. Concurrent or parallel grievance procedures and statutory appeal proceedings should be avoided by public employers, their employees and collective bargaining organizations whenever possible. We recognize that under some circumstances more than one evidentiary hearing on multiple factual and legal issues pertaining to teacher termination may be necessary. Here, however, much duplication of effort could have been avoided.

From the outset, Gardner and the association recognized and informed the district that they had rights granted pursuant to the negotiated agreement as well as rights of appeal granted by Iowa Code chapter 279 (1981). Gardner promptly filed both her grievance and her request for a statutory private hearing. At the first scheduled hearing, that before the board on March 19, 1981, Gardner's representative requested that the private hearing be continued until resolution of her grievance. The board, fully aware of her position that the contract had been violated, denied her request for a continuance. When the grievance resulted in an arbitration award favorable to her, she promptly moved to stay proceedings before the adjudicator, and when the adjudicator refused that motion she attempted to obtain relief from the trial court. She consistently contended that the arbitration decision would finally bind the parties and

bar termination of her contract. Had the district or the board at any stage of the proceedings agreed to await the outcome of the arbitration hearing and honored the arbitrator's decision, further statutory appeal proceedings would have been unnecessary. An inconsistent decision by the board, the adjudicator, and the trial court would have been avoided. *See* Iowa Code § 279.15(2) ("the private hearing . . . shall be held no sooner than ten days and no later than twenty days following the receipt of the request [for a private hearing] unless the parties otherwise agree.")

 We urge the parties to teacher layoff and termination proceedings to expedite necessary hearings but to avoid, whenever possible, unnecessary hearings which may ultimately delay the final decision and possibly yield inconsistent decisions which must finally be sorted out in court.

 III. *Constitutionality of Iowa Code chapter 20.* By its amicus curiae brief, the Iowa Association of School Boards, Inc. contends that the delegation of decision making authority to an arbitrator under the Iowa Public Employment Relations Act, Iowa Code chapter 20 (1981), is unconstitutional. The other parties in this case have not at any stage of the proceedings questioned the constitutionality of Iowa statutes, and we can review neither an issue which was not presented to the trial court nor an issue raised not by the parties themselves but only by a party in the position amicus curiae. *Beitz v. Horak,* 271 N.W.2d 755, 759 (Iowa 1978); *Briggs v. Board of Directors of the Hinton Community School Dist.,* 282 N.W.2d 740, 744 (Iowa 1979). We therefore do not consider that constitutional issue.

Concluding that the trial court erred in vacating the arbitration decision and upholding the adjudicator's decision, we reverse and remand this case for entry of a final judgment granting the petition of Janice Gardner and Shenandoah Education Association for enforcement of the arbitra-

tion award of Edward T. Maslanka dated May 15, 1981.

REVERSED AND REMANDED.

All Justices concur except REYNOLDSON, C.J., and McGIVERIN, UHLENHOPP and SCHULTZ, JJ., who concur in part and dissent in part.

McGIVERIN, Justice (concurring in part and dissenting in part).

I respectfully concur in division III of the majority opinion—constitutionality of Iowa Code chapter 20—and dissent as to the remaining divisions. I would affirm the ruling of the trial court that the arbitration decision was without effect because chapter 279 provides the exclusive means of challenging the school board's termination decision as to plaintiff teacher, Janice Gardner.

The district court decided two issues: (1) Whether the preponderance of the competent evidence in the record supports the Board's decision to terminate the contract of Janice Gardner; and (2) what impact an arbitrator's award has on that determination. The court found that the evidence supported the Board's decision and that arbitration may not be used in place of the provisions of chapter 279 as to the final decision in a teacher termination case.

On appeal, the controlling issue, as viewed by the majority, is whether a grievance arising from a teacher termination due to staff reduction may be resolved by arbitration.[1]

I believe that the majority opinion misconstrues the legislature's intent as to the exclusivity of chapter 279. The majority holds that the chapter 279 procedures are just another option available to an aggrieved teacher. I would hold that the chapter 279 procedures are a teacher's only option in regard to a termination decision.

Our task is to harmonize chapter 279—a specific statute dealing with teacher contracts and termination procedures—and

---

1. Iowa Code section 20.18 provides that the agreement between the public employer and the employee organization "may provide for binding arbitration of public employee grievances and of disputes over the interpretation and application of existing agreements."

chapter 20—a more general statute dealing with collective bargaining for public employees. Acknowledgment of the exclusivity of chapter 279 procedures not only gives preference to the more specific statute, *see* Iowa Code § 4.7 (1983), but it also furthers the purpose of chapter 20.

I. *Rules of statutory construction.* Iowa Code chapter 4 provides rules for statutory construction to be observed when determining the legislative intent of a statute. Iowa Code § 4.1.

Because chapter 20 is a general statute dealing with collective bargaining for public employees and chapter 279 is a more specific statute dealing with teacher contracts and termination procedures, the rule of section 4.7, favoring the more specific statute over a general statute, is observed by recognizing the exclusivity of chapter 279.

The same result is obtained when following the rule of Iowa Code § 4.8 which favors the statute most recently enacted when irreconcilable differences arise between statutes. We take notice of the fact that Iowa Code § 279.13 was amended by 1976 Iowa Acts, ch. 1151, (to provide for the adjudicatory review procedures of sections 279.13–.19) which was two years after the general assembly enacted the Public Employment Relations Act (codified as Iowa Code chapter 20). Both of these general rules of statutory construction lend support to viewing chapter 279 as the exclusive procedure for review of teacher terminations.

More specifically, chapter 20 includes a provision to guide its interpretation.

II. *Iowa Code controls over collective bargaining contract.* Iowa Code chapter 20 anticipates potential inconsistencies between the Code and collective bargaining agreements and has chosen to resolve such differences by deferring to the Code:

A provision of the code which is inconsistent with any term or condition of a collective bargaining agreement . . . *shall supersede* the term or condition of the collective bargaining agreement unless

otherwise provided by the general assembly.

Iowa Code § 20.28 (emphasis added). The use of the word "shall" indicates that such deference is mandatory. The issue before us involves two inconsistent procedures for reviewing teacher terminations: binding arbitration provided for in the collective bargaining agreement versus an adjudicatory hearing provided for in Iowa Code § 279.15 and the appeal process therefrom. We are directed, by section 20.28, to resolve this inconsistency by relying on the adjudicatory procedures provided for in Iowa Code § 279.15 et seq. Therefore, the arbitrator's decision is without effect because the collective bargaining agreement's provision for arbitration to review teacher terminations is preempted by Iowa Code § 279.15.

III. *The purpose of chapter 20 not furthered by arbitration here.* The above view is also supported by the purpose of chapter 20, which was enacted to help promote the public policy objectives of "assuring effective and orderly operations of government." Iowa Code § 20.1. Collective bargaining and arbitration are a means of achieving this goal, but nowhere in chapter 20 are these tools given preference over other statutory tools of effective government. *See City of Des Moines v. Public Employment Relations Board,* 275 N.W.2d 753, 761 (Iowa 1979).

In the present case, effective government requires that school boards have the power to decide when staff reductions are necessary. Section 20.7 recognizes this need and empowers school boards (public employers) to "[s]uspend or discharge public employees for proper cause." Furthermore, the collective bargaining agreement here between the Shenandoah School Board and the Shenandoah Education Association provides that in the case of terminations due to staff reductions "the Board of Education shall determine which employee(s) is to be terminated according to the needs of the school district," based on staff reduction criteria

negotiated under Iowa Code section 20.9.[2] The Board made this determination concerning Gardner following the procedural steps of chapter 279.

Indeed, the majority recognizes the exclusivity of chapter 279 procedures for terminations for just cause personal to the teacher under section 279.27. Terminations due to staff reductions are also for just cause. *Board of Education of Fort Madison Community School District v. Youel*, 282 N.W.2d 677, 680 (Iowa 1979). *See also Smith v. Board of Education of Mediapolis School District*, 334 N.W.2d 150, 151 (Iowa 1983). The procedures detailed in sections 279.-15(2)–.19 are to be followed in both types of termination, and I see no reason not to afford all teachers faced with termination, the school boards and the public with the same procedural protections.

Arbitration in a case such as this does not insure the effective and orderly operation of government. Although the advantage of arbitration is touted to be its speed and economy, the present case demonstrates that these advantages are, at best, one-sided. Gardner's position was terminated because of budgetary constraints on the school district. But even the arbitrator's May 15 decision that she should not be terminated came too late for the school board to seek another position to terminate in order to stay within its budgetary limits. Notice of recommendation for termination must be given to a teacher by March 15. Iowa Code § 279.15(1). Thus the statutory time limit had passed for the Board to start the chapter 279 procedures to terminate "teacher D" who the arbitrator believed should have been terminated rather than Gardner. Assuming the arbitrator was correct, the Board could not have instituted termination of "teacher D," or any other teacher, for "staff reduction" reasons until March 1982. Iowa Code § 279.15(1). Absent a proper notice by March 15, due to the provisions of Iowa Code sections 279.13–.19 which are now written into teacher's contracts in

Iowa, *Bruton v. Ames Community School District*, 291 N.W.2d 351, 356 (Iowa 1980), the contracts of "teacher D" and other teachers were automatically renewed for another year. *Id.* at 357; Iowa Code § 279.13.

Admittedly, the chapter 279 procedures do not eliminate the cause of cases such as this—lack of sufficient funds for education—but the chapter 279 procedures do afford protection to the teacher, the school board and the public through judicial review. The reviewing court must be assured that staff reduction is not merely a pretext for terminating an unwanted teacher and that the decision is not the result of arbitrariness or capriciousness. *Smith*, 334 N.W.2d at 152.

IV. *Recognition that chapter 279 is exclusive means of teacher termination review.* The exclusivity of the specific procedures in chapter 279 was recognized in *Moravek v. Davenport School District*, 262 N.W.2d 797, 805 (Iowa 1978), in which we held that, under the then existing version of chapter 279, teacher contract terminations could not be submitted to arbitration as a matter of public policy. The majority distinguishes *Moravek* on the basis of the finality language which was present in Iowa Code section 279.13 (1975) but which was subsequently deleted by the legislature. *See* 1976 Iowa Acts ch. 1151, § 1.

While focusing on the deletion of the "finality" language from chapter 279, the majority loses sight of subsequent legislative action as to the specificity and exclusivity of the chapter 279 teacher termination procedures. These, too, should be considered in construing chapter 279. *City of Des Moines*, 275 N.W.2d at 762 ("Subsequent legislative action on a subject can assist in discerning the meaning of a statute.").

Changes after *Moravek* did not abandon the chapter 279 procedure of giving a teacher recommended for termination the right

---

**2.** It should be noted that Iowa Code section 20.9 only requires negotiation between the public employer and the employee organization concerning "procedures for staff reduction" and not as to the actual decision involving which employee will be terminated in carrying out a staff reduction.

to a private hearing before the school board and specific reasons for the termination. Iowa Code § 279.13 (1975) and § 279.15(2) (1981). Rather, the changes after *Moravek* increased the specificity by which these rights were detailed in the statute. *Compare* Iowa Code §§ 279.15(2)–.16 (1981) *with* Iowa Code § 279.13 (1975).

I believe that this increase in specificity manifests the legislature's intent that the chapter 279 procedures be the sole avenue for a teacher to challenge a proposed termination. The legislature in chapter 279 has preempted this area of the law. I believe the *Moravek* case principles are still viable: that arbitration of a teacher termination decision by the school board violates legislative intent that chapter 279 controls termination decisions; and that arbitration in such circumstances is against public policy. *Moravek,* 262 N.W.2d at 805.

The trial court correctly ruled that the arbitration award was not binding and should be vacated.

REYNOLDSON, C.J., and UHLENHOPP and SCHULTZ, JJ., join this concurrence in part and dissent in part.