Loretta FERREE, Appellant,

v.

BOARD OF EDUCATION OF the BEN-
TON COMMUNITY SCHOOL DIS-
TRICT and The Benton Community
School District, Appellees.

No. 68250.

Supreme Court of Iowa.

Sept. 21, 1983.

James L. Sayre and Becky S. Knutson, of
Dreher, Wilson, Adams, Jensen, Sayre &
Gribble, Des Moines, for appellant.

Brian L. Gruhn, Cedar Rapids, and Rob-
ert R. Rush, of Lynch, Dallas, Smith &
Harman, Cedar Rapids, for appellees.

Considered by REYNOLDSON, C.J., and
UHLENHOPP, McGIVERIN, LARSON,
and WOLLE, JJ.

LARSON, Justice.

Loretta Ferree appeals her termination
as a teacher in the Benton Community
School District, where she had taught for
fifteen years. In the spring of 1981, the
school was confronted with an enrollment,
personnel, and budgetary situation that re-
quired the layoff of one staff member.
There is no dispute as to the necessity of or
authority for this conclusion. Nor is there
a question of whether chapter 279 procedur-
al requirements were met. Given that one
teacher would be dismissed, the question
before us is whether Ferree was properly
chosen as that teacher. The district court
affirmed the actions of the school board
terminating Ferree's employment; the
Court of Appeals reversed, and we granted

further review. We now vacate the Court of Appeals decision and affirm the judgment of the district court.

Article XIII of the master contract covering employment in the Benton Community School District provided a detailed procedure for staff reduction and provided the order in which terminations would occur:

ARTICLE XIII. REDUCTION OR REALIGNMENT OF STAFF

. . . .

2. Whenever a reduction in employees is deemed necessary by the Board the procedure set forth in this Article shall be under the procedures specified below.

3. The order of reduction within each category shall be under the procedures specified below:

Step 1. Normal attrition resulting from employee's retiring, resigning, or voluntary reduction will be relied upon to the extent it is administratively feasible.

Step 2. The remaining employees to be reduced will be selected by the Board. The Board shall take into account the following facts in making its decision:

1. Staff members with emergency and/or temporary certification shall be reduced first, unless needed to maintain a program.

2. *Staff members currently on probation,* or who were held on the same step of the salary schedule the previous year may be reduced next.

(Emphasis added.)

In November, 1980, Ferree's principal placed her on probation as the result of several negative evaluations. She was subsequently notified in writing that her progress was still unsatisfactory and that she would remain on probation. She was also advised that this status "could" subject her to termination; in a later evaluation she was advised that her continued probation status "will mean termination of your contract."

In 1981, it became clear that a reduction in staff was going to be necessary because of declining enrollment and resulting budget constraints. Natural attrition did not cure the situation. Under step 2(1) of the staff reduction provisions of the master contract, the administration was then required to look to staff members "with emergency and/or temporary certification." This category yielded no names. Ferree, as a "staff member currently on probation" was then selected for termination under step 2(2).

Ferree argues that the probation which put her in a priority position for termination was void for several reasons. The school district responds that (1) the probation was proper and, in any event, Ferree had waived any objection to it by failing to file a grievance under the master contract; and (2) since it was undisputed that a staff reduction was called for and Ferree was then on probation, her termination was not only permitted by the master contract, it was in fact mandated by it.[1]

▪ We begin with the observation that school boards and teachers are authorized to enter into employment contracts, Iowa Code section 279.12, and "that the determination of which teacher should be selected for layoff, when layoff is necessary, may properly be the subject of a Negotiated Agreement authorized by Iowa Code section 20.9 [scope of negotiations]. . . ." *Shenandoah Education Association v. Shenandoah Community School District,* 337 N.W.2d 477, 480 (Iowa 1983). *See also Ar-We-Va Community School District v. Long,* 292 N.W.2d 402 (Iowa 1980). There is no dispute that "personnel and budgetary requirements" can constitute just cause under section 279.15(2), *Briggs v. Board of the Hinton Community School District,* 282 N.W.2d 740, 742 (Iowa 1979); the parties have stipulated to such circumstances in this case.

1. The district also argues that the arbitrator's decision is binding on this appeal under principles of issue preclusion. Neither this claim nor any evidence supporting it, however, appear in the record made before the board, and we will not consider it here.

Ferree concedes the necessity for staff reduction; in effect she argues only that some other staff member should be terminated. Her attack on the termination is on a very narrow ground: that the probation status which put her first in line for staff reduction was illegal. She urges a variety of arguments to support that theory, from lack of definition and lack of authority to impose probation to the claim that this probation was improperly used to fire Ferree because of her epileptic condition. The problem with Ferree's attack on the probation is that it is not timely. The master contract provides a detailed grievance procedure. Article II of the contract provides that

[a] grievance shall mean only an allegation that there has been a violation, misinterpretation, or misapplication of any of the specific provisions of this Agreement.

The master contract also provides that all grievances must be presented "within five (5) working days of the date of occurrence of the event giving rise to the grievance" and that a failure to act on a grievance within the prescribed time limits will constitute a waiver of it and a bar to further action.

 Ferree was notified in November, 1980, that she was on probation, and why. She first challenged that action when termination proceedings were commenced in 1981. While the Court of Appeals held her time for filing the grievance began to run when she was sought to be terminated, we do not agree. The notice of November 1980 significantly changed her status relative to staff reduction by placing her in step 2(2) of the staff reduction agreement. Ferree knew, or should have known because she was a party to the contract, that being on probation made her employment position significantly less secure *at that time.* The potential consequence of that status on her employment was explicitly stated on two evaluations. Thus, under the grievance procedure, she could have contested the probation within the time provided by the master contract. Her obligation to file a timely grievance arose then, not when the later proceedings were commenced.

Under the contract between these parties, Ferree has waived her objections to the probation status; we will not consider them on this appeal. Given the necessity for the staff reduction and her status under the master contract as a teacher currently on probation, we conclude that she was properly terminated under the terms of that agreement.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.